UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SANDRA WILSON,

        Plaintiffs,

   -against-

THE HARTFORD and EMBLEM HEALTH
SERVICES COMPANY, LLC,

        Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

13-CV-0354

(Wexler, J.)

APPEARANCES:

LAW OFFICES OF DAVID L. TRUEMAN, P.C.
By: David L. Trueman, Esq.
18 East 48th Street - Tenth Floor
New York, NY 10017
Attorneys for Plaintiff

BEGOS BROWN & GREEN
By: Patrick W. Begos, Esq.
2425 Post Road
Southport, CT 06890
Attorney for Defendants

WEXLER, District Judge:

      This is an action brought by Plaintiff Sandra Wilson ("Plaintiff" or "Wilson") against The Hartford ("Hartford" or "Defendant") and Emblem Health Services Company, LLC ("Emblem"), pursuant to the Employee Retirement Income Securtiy Act of 1974 ("ERISA"). Plaintiff seeks judicial review of the denial of her claim for long-term disability benefits under a policy issued by Hartford to Plaintiff's employer, Emblem. Presently before the Court are the parties cross-motions for summary judgment based upon the administrative record concerning the claim. For

the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's motion is denied.

BACKGROUND

I.  Plaintiff's Employment and Policy

Plaintiff started working for Emblem in 1988 and continued until July 2010, when she left due to disability. Plaintiff had an office position, and on September 8, 2010, Emblem submitted to Hartford a Physical Demands Analysis, stating Wilson's position as a Claims Manager.[1] It described the position as self-paced, in a cubicle at a computer, and one that permitted her to "alternate sitting and standing as needed." Administrative Record ("AR"), at 508-509. The same description was provided in November 2010 to describe Plaintiff's position as a customer service representative. AR 267-268: Emblem's Physical Demands Analysis of 11/19/10, listing Wilson as Representative/Corresp.,COB containing the same physical demands description. Plaintiff asserts she was a Managing Claims Adjuster, which is "more demanding" than a customer service representative, but does not challenge the physical demands analysis provided by her employer. See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem. in Opp."), at 18-20.[2]

As an employee, Wilson was covered under a long-term disability plan ("LTD Plan") and

---

[1] While there is some dispute as to her title since Plaintiff in her initial claim listed her job title as "Adjustment Manager," and asserts here was a "Managing Claims Adjuster." Emblem listed her with two separate job titles - first as a Claims Manager in September 2010, and then as a "Representative/Corresp., COB." AR 508-509; 267-268.

[2] The Court finds that the description of the physical demands of the position is more relevant to this case than Plaintiff's specific title.

a life insurance plan ("Life Plan"). Under both the LTD Plan and the Life Plan, Hartford had "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." AR 323, 312 (LTD Plan): AR 379, 368 (Life Plan).

The LTD Plan defines disability as "[y]ou are prevented from performing one or more of the Essential Duties of...Your Occupation, for the 24 months following the Elimination Period..." "Essential Duty" is defined as "a duty that 1) is substantial, not incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably omitted or changed." AR 312-313.

The Life Plan provides that a person who is "disabled" as defined in the Life Plan qualifies for a "Waiver of Premium," which is a provision permitting the disabled person to continue life insurance coverage without paying premium. Under the Life Plan, to be disabled means "You are prevented by injury or sickness from doing any work for wage or profit for which You are, or could become, qualified by: 1) education; 2) training; or 3) experience." AR 358-359.

II. Plaintiff's Disability Claim

In July 2010, Plaintiff submitted a claim for short-term disability benefits due to sciatica pain that prevented her from being able to sit for prolonged periods of time. Hartford approved Wilson's claim for short-term disability as of July 19, 2010, and informed her that it would be following up with her treating physicians and reviewing her claim for additional benefits beyond August 15, 2010. AR 432. The short-term disability benefits were extended through November 14, 2010, and in October 2010, Hartford informed Plaintiff it would begin investigating eligibility for long-term benefits, which are not guaranteed by the receipt of short-term disability benefits. AR 426.

A.  Plaintiff's Medical Treatment

In support of her claim, Plaintiff submitted records from her treating doctor, Dr. Mark Nelson, a neurologist. Included was Dr. Nelson's November 10, 2010 Attending Physician's Statement of Continued Disability ("APS"), which is difficult to read, and lists a primary diagnosis of "left cerebral [illegible]" and a secondary diagnosis of "fibromyalgia." It notes that Plaintiff could only sit, stand or walk for 20 minutes at a time, and for a total of 3 hours per day of sitting and 2 hours a day of standing and walking. AR 252-253.

Plaintiff also submitted a report from a rheumatologist, Dr. Serina Chung, October 13, 2010. AR 275-281. Her report notes Plaintiff presented for an evaluation of numbness and tingling in her hands and feet "for about a year." Dr. Chung's office notes state Plaintiff had developed a severe headache with vomiting and photophobia and went to the emergency room. CT scan of her head was negative, and through Dr. Nelson, she had an MRI of her spine which was normal, and of her brain, which was negative. An EMG of her extremities was also normal. Results of an MRI of the brain with contrast were pending, and Plaintiff had not yet done labs which were ordered. Dr. Chung's assessment noted "multiple mild sensory and motor deficits of unclear etiology," and the need to await lab results to rule out possible conditions. On November 22, 2010, Dr. Chung submitted an APS to Hartford, which indicates a primary diagnosis of "migraine" and secondary diagnosis of "peripheral neuropathy," and restricted Plaintiff from "lifting, bending, squatting, standing or sitting for long periods of time." AR 274. There is nothing further in the record to indicate that Plaintiff ever followed up with Dr. Chung. In February 2011, Plaintiff reported to Dr. Nelson that Dr. Chung had told her that "everything was within normal limits." AR 235.

Plaintiff also submitted to Hartford an APS from her physical therapist, Daniel Bogart, who reported in December 2010 that Plaintiff's functionality was affected by her Plaintiff reported pain "with excessive ambulation" and "that sitting excessively increases bilateral leg pain. P[atient] is unable to lift greater than 25 lbs." AR 249-250.

On February 1, 2011, Hartford approved Plaintiff's claim for long-term disability benefits. AR 111-114. Plaintiff was also notified that she was approved for Social Security Disability payments around this time. Plaintiff's Complaint, ¶ 33.

Following the approval, Hartford continued to collect medical records. Requests for information were made of Dr. Nelson in March 2011. In response, Dr. Nelson made a notation on the letter from Hartford stating they could "no longer fill out forms. Jeff [at Hartford] advised [Plaintiff] totally disabled. Functions are pace and tolerate." AR 218. Review of the records also indicated that while Nelson had been treating Plaintiff on roughly a monthly basis, the visits had significantly slowed down following Nelson's APS of November 2010, and there was no further treatment of Plaintiff again until February 2011.

Records from that February 2011 office visit include Dr. Nelson's assessment: "Neuropathy. Multiple somatic complaints, etiology unclear, rule out subclinical neuropathy, rule out fibromyalgia, rule out systemic disorders." AR 236. The record does not contain any evidence that these explanations were ever examined more closely or "ruled out." Plaintiff was to return to in two months, id., yet Plaintiff's next visit with Dr. Nelson was in October 2011.

B.   Hartford's Independent Review

In June 2011, Hartford sought and obtained an independent review of Plaintiff's medical file from Dr. Gary Smith of the University Disability Consortium to help determine Plaintiff's

functionality as of July 9, 2010. While Dr. Smith did not personally examine the Plaintiff, he examined the entire file sent over from Hartford, including Dr. Chung's notes of October 13, 2010 and Dr. Nelson's notes of November 10, 2010 discussed above. See Dr. Smith's Report, AR 185-189. Dr. Smith attempted to collect further information from Dr. Chung and Dr. Nelson. These efforts were unsuccessful. In response to Dr. Smith's request for further information about whether Plaintiff was capable of "working at a light level," someone from her office relayed that Dr. Chung would not answer that question since Plaintiff was not seeing Dr. Chung "for disability or impairment evaluations, or was not being seen for return to work issues." AR 188.

Dr. Smith also attempted to collect more specific information from Dr. Nelson, and after leaving several messages, was unable to do so. Id.

Dr. Smith issued a report and concluded that Plaintiff was capable of "work at a light level if allowed to change positions for comfort on a consistent, full-time basis, from 7/9/10 and moving forward." AR 189. In so concluding, Dr. Smith noted that Dr. Nelson's notes from his last exam of Plaintiff on February 2011 indicated that Plaintiff's "neurological exam, motor exam, and gait" were all normal and there were "neuropathy and multiple somatic complaints." Dr. Smith noted that the physical capacity forms and APSs contained "varying opinions," but that "all of the forms seem to indicate the claimant is capable of some level [of] physical activity, especially if allowed to change positions." AR 189.

On November 18, 2011, Hartford sent a second request to Dr. Nelson to verify whether he agreed or disagreed with Dr. Smith's report. AR 166. On December 29, 2011, the letter was returned to the Hartford with handwritten notation that "[patient] is totally & permanently disabled. Fibromyalgia cervical & lumbar radiculopathy." Id.

Hartford's records indicate that in late January of 2012, phone calls were made for more specific questions for Dr. Nelson, but were not successful. AR 15-18. On January 30, 2012, Hartford sent Nelson a letter requesting additional information in light of Dr. Smith's conclusion that Plaintiff was capable of working a "light level if allowed to change positions." The letter asked when she was last examined by Nelson, if Nelson agreed with Dr. Smith's conclusion, and if not, "provide her highest level of functional capability and your objective exam findings to support any restrictions and limitations provided." AR 161-162. Dr. Nelson responded that he last examined Plaintiff on October 17, 2011, and that "[patient] is totally disabled. See prior notes sent you." Id.

Also in February 2012 a questionnaire was sent to the Plaintiff regarding her current medical condition and the types of activities she engaged in during a typical day. AR 148-152. Plaintiff responded that she has chronic pain and weakness on her right side, muscle weakness and pain in my legs and arms.... I have difficulty standing and sitting." AR 148. She also stated that Dr Nelson was the only treating physician she had seen in the last 18 months. AR 149.

C. Termination of Benefits

On March 8, 2012, the Hartford notified the Plaintiff that it was terminating her the long-term disability benefits. AR 88-92. The letter states that while Dr. Nelson asserts Plaintiff is "totally disabled," but he would not provide specific restrictions regarding Plaintiff's ability to function. It explained that Dr. Smith reviewed the file to determine Plaintiff's functional abilities, and that Dr. Smith's attempts to reach Dr. Nelson were unsuccessful. Review of the medical records provided by Dr. Nelson noted that Plaintiff had a normal exam and a normal gait at the February 2011 exam, Plaintiff's EMG was negative, the MRI of the cervical spine showed

a bulging disc, and the other MRIs of the lumbar and thoracic spine were normal. AR 91. The letter continues that comparing the functionality reported by Dr. Smith, with the physical demands analysis provided by Emblem, Hartford found that Plaintiff was able to "perform the essential duties of your occupation as your employer indicates you are able to change positions." Id.

### D. Appeal of Denial of Benefits

On April 19, 2012, Plaintiff administratively appealed. AR 141-145. Following the appeal, Hartford arranged for Dr. E. Frank Livingstone to conduct an independent medical evaluation to determine Plaintiff's functionality, and specifically stated that a telephone conference with Dr. Nelson had to be conducted before the review could be completed. AR 135. Dr. Livingstone reviewed all the medical files, including Dr. Nelson's more recent exam of October 2011. The notes from that visit state that Plaintiff is "doing approximately the same," still complains of aches and "intermittent numbness and weakness" on the right side. The assessment notes fibromyalgia, neuropathy, weakness, complicated migraine and lumbar radiculopathy. AR 154-156. In conducting his review, Dr. Livingstone sought more specific information from Dr. Nelson regarding the specific limitations and restrictions on Plaintiffs' ability to stand, sit, walk, carry, etc. In response, he responded "pain limits exertion" and that her presentation "has changed at times." Nelson also noted he had last examined her on March 21, 2012. AR 535-537; AR 128-129.

Dr. Livingstone's report is based, *inter alia*, on conclusions drawn from Nelson's most recent available medical records of Plaintiff's exam on October 7, 2011. That exam noted that she had normal coordination, no acute distress, and a normal gait, as well as tenderness in all

extremities and a diminished range of motion in the cervical spine and tenderness in the lumbosacral area. Dr. Livingstone concluded that "[T]hese findings certainly do not substantiate an inability to work. Ms Wilson is at minimum capable of full-time, sedentary level work, with the accommodations of position and posture changes as desired and necessary..." AR 129.

Based on this, on June 26, 2012, Hartford determined that its decision to terminate the long-term disability claim was appropriate. AR 82-84.

### E. Hartford's Denial of Group Life Waiver of Premium

On May 4, 2011, Hartford notified Plaintiff that she was not eligible for a Waiver of Premium benefits on the basis that she was not disabled as defined under the Life Plan since she could "sit, stand and walk if alternating positions." AR 340-345. Plaintiff appealed this determination, which was upheld on June 7, 2011. AR 334-337. That denial notes that under the Life Plan, in order to be disabled, Plaintiff had to be "precluded from performing any work and not just your job or occupation," which was not found here. AR 336.

## III. Plaintiff's Complaint

Having exhausted the administrative review, Plaintiff brings this action seek review pursuant to ERISA. Both sides have moved for summary judgment, and the Court now turns to that question.

## DISCUSSION

### I. Standard of Review

When a plan administrator has discretionary authority to determine eligibility or construe terms of the plan, "th[e] Court applies a more deferential standard, seeking to determine only whether the administrator's decision was 'arbitrary and capricious.'" Miles v. Principal Life Ins.

Co., 720 F.3d 472, 485 (2d Cir. 2013), citing Celardo v. GNY Auto. Dealers Health & Welfare Trust, 318 F.3d 142, 145 (2d Cir. 2003) ("[P]lans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard.").

When applying the arbitrary and capricious standard of review, the court may overturn an administrator's decision to deny ERISA benefits "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow[;] thus[,] we are not free to substitute our own judgment for that of [the insurer] as if we were considering the issue of eligibility anew.'" Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 83-83 (2d Cir. 2009), citing Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)(internal quotation marks and citations omitted).

II.     Hartford's Denial of Disability Benefits Was Reasonable

    A.     Hartford's Decision on the LTD Claim Was Not Arbitrary and Capricious

The thrust of Plaintiff's argument is that Defendant and its medical reviewers failed to consider adequately the entirety of Plaintiff's medical records, including those of Plaintiff's treating physician, Dr. Nelson, who opined a number of times that Plaintiff was totally and permanently disabled, and that of Daniel Bogart in January 2011 that Plaintiff could only sit for 30 minutes to an hour at a time, for no longer than 2-3 hours per day. AR 246-247. Plaintiff claims Hartford also disregarded the opinion of her physical therapist, Ronald Bredow, in April 2011, that Plaintiff could not "stand or sit for prolonged periods of time." AR 208-209.

The reports of Drs. Smith and Livingstone outline the medical records they reviewed. Dr. Smith, who issued his report in June 2011, AR 185-189, notes that he reviewed notes from Dr.

Chung, the rheumatologist, Plaintiff's physical therapy reports and notes, and Dr. Nelson's notes of November 2011, which state that Plaintiff could sit, stand and walk for up to 20 minutes at a time, for a total of 2-3 hours per day. Also reviewed were Nelson's office visit notes from February 16, 2011, which noted that Wilson's neurological and motor exams and gait are all normal. Smith's attempts to gather more information from Nelson and Chung were unsuccessful. Smith concluded that "[t]he documented physical exam findings are not impressive and certainly do not support complete inability to work," "the forms indicate that claimant is capable of some level of physical activity, especially if allowed to change positions." AR 188-189.

Similarly, Livingstone's report outlined the medical records he reviewed following Plaintiff's appeal of the denial of the claim in March 2012. Since time had gone by, Dr. Livingstone's review revealed that Plaintiff had no longer been seeing Dr. Nelson as frequently. Dr. Nelson's notes state the Plaintiff was "totally disabled," yet Plaintiff was treating with him less frequently. Efforts to reach Nelson to gather specific information regarding Plaintiff's functionality were unsuccessful or failed to provide specifics to substantiate Nelson's opinion that Plaintiff was totally disabled.

Hartford's decision to decline disability benefits based on these reviews of Plaintiff's medical file was not arbitrary or capricious. The doctors reasonably reviewed the medical files, and repeatedly attempted to gather further information, unsuccessfully, to support Nelson's conclusory claim that Plaintiff was totally disabled. Nelson, as well as Plaintiff's physical therapists, noted that Plaintiff could sit, stand or walk for periods of time, with alternating positions, and Plaintiff's employer indicated that re-positioning in that way was possible in her

job. Thus, the Court finds that Hartford's decision finding that Plaintiff is not disabled as defined by the LTD plan was not arbitrary and capricious. Therefore, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion.

      B.      <u>Hartford's Denial of Life Plan Premium Waiver was Reasonable</u>

As noted above, the definition of "disabled" under the Life Plan is different from, and broader than, that under the LTD Plan. The Life Plan definition of disabled is often referred to as the "any occupation" definition, as opposed to the "regular occupation" definition of the LTD Plan. See Def. Memorandum in Reply, at 6. Thus, to be disabled under the Life Plan, Plaintiff had to be "precluded from performing any work and not just your job or occupation." AR 336. Hartford's decision to decline the Group Life Waiver of Premium under the Life Plan was not arbitrary and capricious, and therefore Defendants' motion for summary judgment on this claim is also granted.

      C.      <u>The SSD Award Does Not Make Hartford's Denial Unreasonable</u>

Plaintiff argues that Hartford's decision should be overturned since it failed to consider that she was awarded social security disability benefits ("SSD") from the Social Security Administration ("SSA"). In support, Plaintiff cites case law from other circuits. The Court notes that on this issue, the Second Circuit has stated that "[w]e encourage plan administrators, in denying benefits claims, to explain their reasons for determining that claimants are not disabled where the SSA arrived at the opposite conclusion," but failure to do so does not "render its denial of [plaintiff's] LTD benefits claim arbitrary and capricious." <u>Hobson v. Metropolitan Life Ins. Co.</u>, 574 F.3d 75, 92 (2d Cir. 2009).

In this case, the SSD award is not determinative, and Hartford's contrary conclusion does

not render it arbitrary and capricious. As noted by the Defendant, the SSD determination was made in February 2011, at a time when Hartford had already initially deemed Plaintiff disabled, and so the SSD award did not consider the subsequent medical information from later in 2011, which Hartford did. Furthermore, Defendant notes that the SSA is subject to the "treating physician rule" requiring it to defer to the claimant's treating physician, which does not bind a plan administrator. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) ("we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation").

Finally, "the question of whether or not a claimant is disabled must be judged according to the terms of the Plan and not according to the SSA's definition." Lopes v. First Unum Life Ins. Co., 2011 WL 1239899, *9 (E.D.N.Y. 2011). Here, the Court finds that there is sufficient evidence in the record to support Defendant's decision to decline disability benefits, and coming to a different conclusion than the SSA on this issue does not make Hartford's decision unreasonable. Id.

III.   Defendant Hartford's Conflict of Interest was not a Factor

Plaintiff argues that Defendants' conflict of interest as an administrator that both evaluates claims and pays benefits should be considered as a tiebreaker in this case to favor Plaintiff. See Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 18. Yet, the deference due to the administrator under the arbitrary and capricious standard "doesn't change unless the plaintiff shows that the administrator was, in fact, influenced by the conflict of

interest." Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 83 (2d Cir. 2009) (citations omitted). In Hobson, the Second Circuit stated that the district court failed to consider documents Plaintiff's claimed showed that a conflict of interest existed that effected the administrator's decision-making. Id. The Court then reviewed the documents and found that they did not show that a "conflict of interest as evaluator and payor of benefits influenced its reasonable interpretation of Hobson's claim for benefits." Id.

Here, Plaintiff has not provided any evidence that a conflict of interest played any role in Hartford's determination of Plaintiff's claim for benefits. Plaintiff's conclusory statements that a conflict exists are insufficient to have that factor play a role in the Court's review of whether Hartford's claim denial was arbitrary and capricious. See Hobson, 574 F.3d at 83.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. The Clerk of the Court is directed to close this case.

SO ORDERED.

/s/
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 31, 2014